UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:15-cr-00054-JAW |
| | ) | |
| BRIAN MULKERN | ) | |

**ORDER ON RESENTENCING**

After he pleaded guilty to being a felon in possession of ammunition, the Court sentenced a defendant to one hundred and eighty months incarceration consistent with the mandatory minimum sentence in the Armed Career Criminal Act (ACCA). The Court of Appeals for the First Circuit reversed this Court's ACCA determination and remanded the case for resentencing. With the ACCA inapplicable, the issue turns to whether the defendant is subject to an enhanced guideline calculation under U.S.S.G. § 2K2.1, the Guideline provision for possession of ammunition by a felon, because of a prior state conviction for robbery. The Court determines that, because there is insufficient evidence to conclude that the defendant's prior conviction for robbery is a "crime of violence" under U.S.S.G. § 2K2.1(a)(4)(A), he is subject to a base offense level of fourteen. Also, although the Court concludes that the defendant is not entitled to credit for time served while in state custody for a dismissed state charge under U.S.S.G. § 5G1.3, the Court will downward depart under U.S.S.G. § 5K2.0(a)(2)(b) and grant the Defendant a credit for the time he spent in custody on a state charge that is relevant conduct under the guidelines to the federal conviction.

# I. BACKGROUND

## A. Procedural Background

On March 11, 2015, a federal grand jury indicted Brian Mulkern for being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(e). *Indictment* (ECF No. 1). On August 14, 2015, Mr. Mulkern pleaded guilty to the single charge contained in the indictment. *Minute Entry* (ECF No. 35). On January 28, 2016, the Court sentenced Mr. Mulkern to 180 months in prison, five years of supervised release following his term of incarceration, and a $100.00 special assessment. *Minute Entry* (ECF No. 53); *J.* (ECF No. 55). The Court found that Mr. Mulkern was subject to the sentencing provision of the Armed Career Criminal Act (ACCA). 18 U.S.C. § 924(e). The ACCA imposes a mandatory minimum fifteen year term of imprisonment for felon-in-possession cases when a defendant has three prior qualifying convictions. *Id.* A prior qualifying conviction is either a "violent felony" or a "serious drug offense." *Id.*

On February 3, 2016, Mr. Mulkern filed an appeal of the sentence. *Notice of Appeal* (ECF No. 57). On April 14, 2017, the United States Court of Appeals for the First Circuit issued its opinion and judgment, reversing this Court's ACCA determination. *United States v. Mulkern*, 854 F.3d 87 (1st Cir. 2017); *Op. of the U.S. Ct. of Appeals for the First Circuit* (ECF No. 62); *J. of the U.S. Ct. of Appeals for the First Circuit* (ECF No. 63). Mr. Mulkern's prior convictions included two undisputedly qualifying burglaries, as well as a robbery and a drug trafficking conviction. *Mulkern*, 854 F.3d at 89. The First Circuit held that neither the robbery

conviction, nor the drug trafficking conviction qualified as an ACCA predicate. *Id.* at 97. Mr. Mulkern, therefore, did not have three prior qualifying convictions, so the First Circuit vacated his sentence and remanded for resentencing. *Id.* On May 8, 2017, the First Circuit issued its mandate. *Mandate of the U.S. Ct. of Appeals for the First Circuit* (ECF No. 64).

On June 8, 2017, the Government filed a sentencing memorandum. *Gov't's Mem. in Aid of Sentencing* (ECF No. 70) (*Gov't's Mem.*). On June 21, 2017, the Defendant filed his sentencing memorandum. *Def.'s Sentencing Mem.* (ECF No. 73) (*Def.'s Mem.*). On June 27, 2017, the Government filed a reply memorandum. *Gov't's Reply to the Def.'s Sentencing Mem.* (ECF No. 74) (*Gov't's Reply*).

**B.    The Factual and Legal Background**

With the ACCA inapplicable, two issues remain for resentencing, both Guideline questions. The first involves Mr. Mulkern's prior robbery conviction and the applicability of the base offense level enhancement for a prior "crime of violence" under U.S.S.G. § 2K2.1(a)(4)(A), which is similar to the ACCA category of "violent felonies." The second involves credit for time served under U.S.S.G. § 5G1.3 during the period that the state of Maine held Mr. Mulkern before his original federal sentencing.

On August 10, 2001, a Cumberland County, Maine grand jury indicted Mr. Mulkern for robbery, among other offenses, a violation of 17-A M.R.S. § 651.[1] The

---

[1]    The version of 17-A M.R.S. § 651 in effect at the time of Mr. Mulkern's 2001 conviction for robbery reads:

state indictment charged Mr. Mulkern with robbing Cassandra Cummings and the Short Stop store in Pownal, Maine by attempting to take money using the threatened use of force. On October 25, 2001, Mr. Mulkern pleaded guilty to the robbery alleged in the indictment.

As further background for the § 2K2.1(a)(4)(A) issue, § 2K2.1 is the Guideline section applicable to Mr. Mulkern's current offense of being a felon in possession of

---

1. A person is guilty of robbery if he commits or attempts to commit theft and at the time of his actions:
   A. He recklessly inflicts bodily injury on another;
   B. He threatens to use force against any person present with the intent
      (1) to prevent or overcome resistance to the taking of the property, or to the retention of the property immediately after the taking; or
      (2) to compel the person in control of the property to give it up or to engage in other conduct which aids in the taking or carrying away of the property;
   C. He uses physical force on another with the intent enumerated in paragraph B, subparagraphs (1) or (2),
   D. He intentionally inflicts or attempts to inflict bodily injury on another; or
   E. He or an accomplice to his knowledge is armed with a dangerous weapon in the course of a robbery as defined in paragraphs A through D.
2. Robbery as defined in subsection 1, paragraphs A and B, is a Class B crime. Robbery as defined in subsection 1, paragraphs C, D, and E, is a Class A crime.
1975 Me. Laws 3341-42. The current version of 17-A M.R.S. § 651 reads:
1. A person is guilty of robbery if the person commits or attempts to commit theft and at the time of the person's actions:
   A. The actor recklessly inflicts bodily injury on another. Violation of this paragraph is a Class B crime;
   B. The actor threatens to use force against any person present or otherwise intentionally or knowingly places any person present in fear of the imminent use of force with the intent:
      (1) To prevent or overcome resistance to the taking of the property, or to the retention of the property immediately after the taking; or
      (2) To compel the person in control of the property to give it up or to engage in other conduct that aids in the taking or carrying away of the property.
Violation of this paragraph is a Class B crime;
   C. The actor uses physical force on another with the intent specified in paragraph B, subparagraph (1) or (2). Violation of this paragraph is a Class A crime;
   D. The actor intentionally inflicts or attempts to inflict bodily injury on another. Violation of this paragraph is a Class A crime; or
   E. The actor is armed with a dangerous weapon in the course of a robbery as defined in paragraphs A through D or knows that the accomplice is so armed. Violation of this paragraph is a Class A crime.

ammunition. Section 2K2.1 provides for different base offense levels, ranging from a low of six to a high of twenty-six, depending on the circumstances of a defendant's offense and his background. Here, there are two possibilities. First, as recommended by the PO, Mr. Mulkern's base offense level would be twenty if he committed the instant offense "subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(4)(A). Second, if he does not have a prior felony conviction of either a crime of violence of a controlled substance offense, his base offense level would be lowered to fourteen. U.S.S.G. § 2K2.1(a)(7); *Def.'s Mem.* at 2 ("If this robbery conviction qualifies under 2K2.1 as a crime of violence, the Defendant's base offense level will be 20. If it does not qualify, the Defendant's base offense level will be 14"). If the higher base offense level applies, Mr. Mulkern's guideline sentence range will be seventy to eighty-seven months. If the lower base offense level applies, his guideline sentence range will be thirty-seven to forty-six months.

## II. THE PARTIES' POSITIONS

### A. The Robbery Conviction and "Crime of Violence"

#### 1. The Government's Memorandum

The Government explains that when determining whether a state conviction is an enumerated offense under U.S.S.G. § 4B1.2(a)(2), the Court should compare the state statute against the "generic" crime using the same approaches from ACCA cases: the "categorical approach" for indivisible statutes, and the "modified categorical approach" for divisible statutes. *Gov't Mem.* at 4 (citing *United States v. Ramirez*, 708 F.3d 295, 302 n.8 (1st Cir. 2013); *United States v. Castro-Vazquez*, 802

F.3d 28, 35 (1st Cir. 2015). The Government believes that Mr. Mulkern was convicted under either 17-A M.R.S. § 651(1)(C) or 17-A M.R.S. § 651(1)(B)(2), *id.* at 5, and that both provisions fit within the generic crime of robbery. *Id.* at 5-6. The Government concludes that Mr. Mulkern's robbery conviction qualifies as a crime of violence, which makes the base offense level 20. *Id.* at 5-6.

### 2.    The Defendant's Memorandum

Mr. Mulkern argues that it is not clear under which subsection of § 651(1) he was convicted, and that it may have been § 651(1)(A), rather than § 651(1)(B) or (C). *Def.'s Mem.* at 4-5. He contends that the elements of subsection (A) do not fall wholly within the definition of generic robbery since a person could commit a robbery under subsection (A) without presenting "an immediate danger to the target of the theft." *Id.* at 6 (quoting *Mulkern*, 854 F.3d at 93). Accordingly, Mr. Mulkern reasons that his robbery conviction does not qualify as a crime of violence. *Id.* He also emphasizes that each subpart of the robbery provision refers to theft, and there are many ways to commit theft under Maine law, including "*any* degree of force applied during theft." *Id.* at 5 (quoting *Mulkern*, 854 F.3d at 93 (quoting *Raymond v. State*, 467 A.2d 161, 165 (Me. 1983)) (emphasis in original). Finally, he cites *United States v. Wicklund*, No. 3:15-cr-00015-HZ, slip op. (D. Or. Nov. 17, 2016) and seeks to distinguish *United States v. Childers*, 1:16-cr-00079-JAW (June 13, 2017). *Id.* Mr. Mulkern concludes that the base offense level is 14. *Id.* at 6.

### 3.    The Government's Reply

The Government first counters that, although defendants can commit theft in ways that do not fit within the generic definition of robbery, the pertinent subsections

of Maine's robbery statute are a narrower class of thefts that all fit within the generic definition of robbery. *Gov't's Reply* at 2-3. It also points out that Mr. Mulkern argued to the First Circuit that he was convicted under subsection (B)(2), and is only now arguing he was convicted under subsection (A). *Id.* at 3. The Government denies that Mr. Mulkern was convicted under subsection (A), but also argues that even if he was, subsection (A) still qualifies as a "crime of violence" for purposes of the sentencing guideline. *Id.* at 3-6.

### B. Time Served in State Custody

#### 1. The Defendant's Memorandum

Mr. Mulkern observes that he "went into custody on August 26, 2014 for state offenses related to the charges in this case, and was held during the entire time of the pendency of his state and federal proceedings." *Def.'s Mem.* at 7. Mr. Mulkern claims that the Bureau of Prisons (BOP) has informed him that the start time for his federal sentence will begin at the date of his transfer to federal custody following his sentencing on January 28, 2016. *Id.* He asks the Court to account for this time in state custody for a burglary charge in which it was alleged that he stole, among other things, the ammunition that resulted in this conviction. *Id.* (citing U.S.S.G. § 5G1.3(b)(1)).

#### 2. The Government's Reply

The Government opposes Mr. Mulkern's request, arguing that U.S.S.G. § 5G1.3(b) is inapplicable because Mr. Mulkern was not convicted of the state charges, nor were his guideline calculations enhanced by any conduct that formed the basis of his state custody. *Gov't's Reply* at 6-7 (citing *United States v. Gondek*, 65 F.3d 1, 2

(1st Cir. 1995); *United States v. Lino*, 493 F.3d 41, 45 (1st Cir. 2007); *United States v. Figueroa-Figueroa*, 791 F.3d 187, 192 (1st Cir. 2015)).

## III. DISCUSSION

### A. The Robbery Conviction and the Base Offense Level

The guideline base offense level for felon-in-possession cases depends in part on whether a defendant has a prior conviction of a "crime of violence" or a "controlled substance offense." U.S.S.G. § 2K2.1(a)(4)(A). A crime of violence is defined as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, **robbery**, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

U.S.S.G. § 4B1.2(a) (emphasis supplied). Subsection (1) is called the "force clause," and subsection (2) is called the "enumerated offenses clause." A court must determine whether the specific state's legal definition of the offense of conviction fulfills either clause of the Guidelines' definition of a crime of violence.

In making this determination, courts have developed two approaches: the categorical approach and the modified categorical approach. *See United States v. Mulkern*, 854 F.3d 87, 90 (1st Cir. 2017).[2] When the state statute is indivisible, meaning there is only one way to commit the crime, the court uses the categorical approach, which assumes the state statute of conviction "rested upon [nothing] more

---

[2]    Although *Mulkern* is an ACCA case, the First Circuit has held that "the terms 'crime of violence' under the career offender guideline and 'violent felony' under the ACCA are nearly identical in meaning, so that decisions construing one inform the construction of the other." *United States v. Willings*, 588 F.3d 56, 58 n.2 (1st Cir. 2009).

than th[e] least of the acts criminalized." *Id.* (citing *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013)) (internal quotations omitted). The court then compares the state statute of conviction's elements to the pertinent definitions under the federal law. *Id.* If there is a match, the state conviction is a crime of violence. *Id.*

However, when the state statute is divisible, meaning that it lays out elements in the alternative and thereby defines multiple crimes, courts employ the modified categorical approach. *Id.* (citing *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016)). Under that method, "the court looks beyond the statute of conviction to a narrow 'class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy)'—known as *Shepard* documents—'to determine what crime, with what elements, the defendant was convicted of.'" *Id.* (citing *Shepard v. United States*, 544 U.S. 13, 26 (2005)). The court can then compare that version of the crime, as the categorical approach commands, with the pertinent definition under federal law, to see if the state conviction is eligible. *Id.*

The First Circuit has already determined that Maine's robbery statute does not qualify as a crime of violence based on the force clause, because it allows for convictions based on a level of force below that required to be considered "physical force" under the guideline. *Mulkern*, 854 F.3d at 91-94.[3] At least since August 1, 2016, however, robbery is an enumerated offense under the second clause of the

---

[3] For the reasons described in footnote 2, the First Circuit's conclusions about the force clause of the ACCA also apply to the force clause of the sentencing guideline.

guideline.[4]  *See Supplement to the 2015 Guidelines Manual*, UNITED STATES

SENTENCING COMMISSION (Aug. 1, 2016).

---

[4]      The parties do not dispute which Guidelines Manual applies here.  Nevertheless, since Mr. Mulkern's conduct pre-dates the 2016 manual, the Court notes the potential for ex post facto concerns.  The Court recently addressed these issues in *United States v. Childers*, No. 1:16-CR-00079-JAW, 2017 WL 2559858, at *5-6, 2017 U.S. Dist. LEXIS 90334, at *10-15 (D. Me. June 13, 2017).

Pursuant to U.S.S.G. § 1B1.11(a), "[t]he Court shall use the Guidelines Manual in effect on the date that the defendant is sentenced."  However, "[i]f the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the ex post facto clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed."  *Id.* § 1B1.11(b)(1).

The United States Sentencing Commission revised the definition of "crime of violence" in 2016, eliminating the residual clause and adding robbery as an enumerated offense in the text of the Guideline.  The United States Supreme Court held that the residual clause of the ACCA was void for vagueness.  See *Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015) (*Johnson II*).  After the *Johnson II* decision, courts disagreed over whether the *Johnson II* holding applied to the identical language found in the residual clause in the Guidelines Manual.  *See United States v. Beckles*, 137 S. Ct. 886, 891–92 n.2 (2017); see also Amendments to the Sentencing Guidelines (Jan. 21, 2016) at 3 ("While not addressing the guidelines, [the *Johnson II*] decision has given rise to significant litigation regarding the guideline definition of 'crime of violence'").  Although the First Circuit did not have the opportunity to definitively decide the issue because the Government conceded the residual clause in the Guidelines was vague under *Johnson II*, it did hold that without the residual clause it was compelled to ignore Application Note 1 to U.S.S.G. § 4B1.2.  *See United States v. Soto–Rivera*, 811 F.3d 53, 62 (1st Cir. 2016).

As a result of the differing opinions as to the validity of the residual clause in the Guidelines, the United States Sentencing Commission revised the definition of "crime of violence" found at U.S.S.G. § 4B1.2 in the 2016 Guidelines Manual.  The "force clause" remains the same, but the second clause eliminates the residual clause and simply enumerates specific offenses that qualify as "crimes of violence" (the enumerated offenses clause).

Based on this framework, application of the 2016 Guidelines Manual would have violated the ex post facto clause.  Under the 2016 definition of "crime of violence," robbery is an enumerated offense in the text of the Guidelines, whereas under the 2015 Guidelines Manual, robbery is listed only in Application Note 1, which the First Circuit deemed was inconsistent with the Guideline itself in light of the Government's concession that *Johnson II* invalidated the residual clause.  *United States v. Fields*, 822 F.3d 20, 33 (1st Cir. 2016) ("The parties agree that, in light of [*Johnson II*], the residual clause of the career offender guideline is unconstitutional and thus may not be relied upon to classify a conviction of a crime of violence under the career offender guideline.  We assume without deciding that the parties are correct . . .").

However, the United States Supreme Court recently held that the residual clause in the Guidelines is not subject to vagueness challenges under the Due Process Clause.  See *Beckles*, 137 S. Ct. at 890.  Thus, as the law now stands, the Court may apply the residual clause, and as a consequence, Application Note 1, when determining whether a conviction is a predicate offense for purposes of career offender status.  Because Application Note 1 to U.S.S.G. § 4B1.2 in the 2015 Guidelines Manual enumerates robbery as a "crime of violence," the legal analysis becomes the same whether the Court analyzes the robbery conviction under the 2015 or 2016 version of the Guidelines Manual.  *See Taylor v. United States*, 495 U.S. 575, 602 (1990) (analyzing whether the statutory definition of a prior conviction substantially corresponds to the generic version of the enumerated offense).  At least, the difference between the 2016 Guideline, where robbery is expressly enumerated

Where a specific offense is enumerated, the trial court must determine if the state statute of conviction substantially corresponds to the generic definition of that enumerated offense. *Taylor v. United States*, 495 U.S. 575, 602 (1990); *see also Deschamps v. United States*, 133 S. Ct. 2276, 2281 (2013) ("[Courts] compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime—*i.e.*, the offense as commonly understood"). The prior conviction qualifies as a crime of violence only if the statute's elements are the same as, or narrower than, those of the generic offense. *Deschamps*, 133 S. Ct. at 2281; *see also Mathis*, 136 S. Ct. at 2248.

The generic form of robbery is, essentially, "the taking of property from another person or from the immediate presence of another person by force <u>or</u> by intimidation." *See United States v. Lockley*, 632 F.3d 1238, 1244 (11th Cir. 2011) (quoting *United States v. Walker*, 595 F.3d 441, 446 (2d Cir. 2010)) (emphasis in original); *see also* 67 Am. Jur. 2d *Robbery* § 12 ("[Robbery] is the taking, with intent to steal, personal property of another, from his or her person or in his or her presence, against his or her will, by violence, intimidation, or by threatening the imminent use of force"); Model Penal Code § 222.1(1) ("A person is guilty of robbery if, in the course of committing a theft, he: (a) inflicts serious bodily injury upon another; or (b) threatens another with or purposely puts him in fear of immediate serious bodily injury . . . ."); 18 U.S.C. § 1951(b)(1) ("The term 'robbery' means the unlawful taking or obtaining of

---

in the body of § 4B1.2(a)(2), and the 2015 Guideline, where robbery was listed in the application note, does not justify a different result.

personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury . . . .").

Maine's robbery statute is divisible, since there are alternate ways to commit the same crime. The parties dispute whether the *Shepherd* documents here are sufficient to establish the subsection of Maine's robbery statute under which Mr. Mulkern was convicted. At the First Circuit, the parties made arguments about the true section under which Mr. Mulkern pleaded guilty, but the First Circuit did not decide the issue. *Mulkern*, 854 F.3d at 93 ("We need not resolve the parties' dispute over which subpart of the robbery statute Mulkern pled guilty to violating—section 651(1)(B)(2) or section 651(1)(C)").

### 1.    The Possible Robbery Provisions

Mr. Mulkern may have pleaded guilty under one of three subsections, which the Court analyzes separately.

### a.    § 651(1)(C): Use of Physical Force

In Mr. Mulkern's appeal to the First Circuit, the Government argued that he pleaded guilty of robbery under § 651(1)(C). *Mulkern*, 854 F.3d at 92. Under the version of this subsection in effect at the time, "[a] person is guilty of robbery if he commits or attempts to commit theft and at the time of his actions . . . [h]e uses physical force on another with the intent" either "[t]o prevent or overcome resistance to the taking of the property, or to the retention of the property immediately after the taking" or "[t]o compel the person in control of the property to give it up or to engage in other conduct which aids in the taking or carrying away of the property." 1975 Me. Laws 3341-42; *see also* 17-A M.R.S. § 651(1)(C). Thus, the key distinction between

this subsection and the others is that this subsection requires that the defendant actually use physical force.

Robbery under subsection (C) fits within the definition of generic robbery. First, there are many ways to commit "theft" under Maine law, but each of the numerous provisions contains the core element of "depriving" or "taking" the "property of another." 17-A M.R.S. §§ 351-363. These are the identical terms courts use to define the theft element of a generic robbery. Second, the use of "physical force" is one of the two methods a defendant can use to commit a generic robbery. The other is by using "intimidation" or "threat" of force. While robbery under subsection (C) may not be exactly synonymous with generic robbery, it is a subset within the definition of generic robbery. Accordingly, a conviction under subsection (C) is a crime of violence for purposes of the guideline calculation.

### b. § 651(1)(B)(2): Threat to Use Force

In Mr. Mulkern's appeal to the First Circuit, he argued that he pleaded guilty to robbery under § 651(1)(B)(2). *Mulkern*, 854 F.3d at 92. Under the version of this subsection in effect at the time:

> "A person is guilty of robbery if he commits or attempts to commit theft and at the time of his actions . . . [h]e threatens to use force against any person present with the intent . . . to compel the person in control of the property to give it up or to engage in other conduct which aids in the taking or carrying away of the property."

1975 Me. Laws 3341-42; *see also* 17-A M.R.S. § 651(1)(B)(2). This subsection does not require that the defendant actually use physical force. The threat of force is enough.

Robbery under subsection (B)(2) fits within the definition of generic robbery. First, as with subsection (C), "theft" under (B)(2) contains the core element of

"depriving" or "taking" the "property of another." *See* 17-A M.R.S. §§ 351-363. These are the identical terms courts use to define generic robbery.

A slightly more difficult issue is whether a threat to use force is sufficient to constitute a generic robbery. However, as described earlier, apart from the actual use of force, a threat to use force is the second way a person may commit a generic robbery. Furthermore, subsection (B)(2) does not encompass all types of threats, but includes only threats to use physical force, and it limits the threats to threats intended to compel the person with the property to give it up. Again, while robbery under subsection (B)(2) may not be exactly synonymous with generic robbery, it a subset of generic robbery. Accordingly, a conviction under subsection (B)(2) is a crime of violence for purposes of the guideline calculation.

### c. § 651(1)(A): Reckless Infliction of Bodily Injury

Mr. Mulkern now argues that he pleaded guilty to robbery under § 651(1)(A). *Def.'s Mem.* at 4-5. The version of this subsection in effect at the time specified, "A person is guilty of robbery if he commits or attempts to commit theft and at the time of his actions . . . [h]e recklessly inflicts bodily injury on another." 1975 Me. Laws 3341-42; *see also* 17-A M.R.S. § 651(1)(A).

Robbery under § 651(1)(A) does not fit completely within the definition of generic robbery. As with the other two subsections discussed above, the "theft" component under Maine law matches the core element of "depriving" or "taking" the "property of another" as required for generic robbery. *See* 17-A M.R.S. §§ 351-363.

The equivalence, however, ends there. Subsection (A) does not require either force or threat of force, as generic robbery requires. Instead, the statute requires a

"bodily injury." Conduct causing injury is not necessarily the same as conduct involving the use of "force" or "threat of force" to compel someone to give up their property. The potential class of recipients of the action under § 651(1)(A) is potentially broader than under generic robbery. Under the former, the defendant can recklessly injure any other person for any other reason, as long as the injury occurs during the theft; under the latter, the defendant must direct force or threats against the owner or possessor in particular, or against someone else in order to compel the owner or possessor.

The distinction between subsection (A) and a generic robbery weaves two concepts: intentionality and injury. Under the Model Penal Code, for example, a generic robbery consists of inflicting "serious bodily injury" or threatening another to put him "in fear of immediate serious bodily injury." MODEL PENAL CODE § 222.1(1). Subsection (1)(A) refers to "recklessly" inflicting "bodily injury." 17-A M.R.S. § 651(1)(A). The Maine Criminal Code defines "bodily injury" to mean "physical pain, physical illness or any impairment of physical condition." 17-A M.R.S. § 2(5). The Maine Criminal Code contains a heightened definition for "serious bodily injury", § 2(23), which would likely meet the generic definition of "serious bodily injury" in robbery, but § 651(1)(A) uses the more generalized term. Under Maine caselaw, "bodily injury" lies between offensive physical contact and serious bodily injury. *State v. Carmichael*, 405 A.2d 732, 735 (Me. 1979). Assuming that a generic robbery requires the infliction or threat of serious bodily injury, subsection (A) creates a lower threshold and is not a generic robbery.

This conclusion is buttressed by the fact that the defendant's infliction of bodily injury may be reckless. The Maine Criminal Code defines acting "recklessly" as "consciously disregard[ing] a risk that the person's conduct will cause such a result", or "consciously disregard[ing] a risk that such circumstances exist", in situations that must involve "a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation." 17-A M.R.S. § 35(3). The lower standard of intentionality combined with the lower standard for bodily injury confirms that subsection (A) is something different than a generic robbery.

In addition to these issues, there are others. Read literally, subsection (A) could capture a reckless injury to a bystander or injuries occasioned by the perpetrator's attempt to distract the property owner.[5] In short, there are surely numerous ways a defendant might recklessly injure a person in the course of a theft without satisfying the elements of a generic robbery.

A prior conviction qualifies as a crime of violence only if the statute's elements are the same as, or narrower than, those of the generic offense. *Deschamps*, 133 S. Ct. at 2281; *see also Mathis*, 136 S. Ct. at 2248. The elements of subsection (A) are different and broader than generic robbery. Accordingly, a conviction under subsection (A) is not categorically a crime of violence for purposes of the guideline calculation.

---

[5] For example, while committing a theft, a defendant might recklessly injure a bystander while taking unguarded property or might recklessly create a dangerous distraction, which injures a third party.

### 2. The *Shepard* Documents

This exercise in statutory interpretation does not end the discussion. Since one of the possible ways of committing robbery is not crime of violence, the Court must determine if the *Shepard* documents clear up the ambiguity as to which of the subsections of § 651 Mr. Mulkern was convicted of violating. *Mulkern*, 854 F.3d 87, at 90 (citing *Shepard v. United States*, 544 U.S. 13, 26 (2005)). The parties presented three *Shepard* documents, all relating to the 2001 robbery charge.

The first document is the indictment in Mr. Mulkern's 2001 criminal case. *Sentencing Ex.* 4. On August 2, 2001, a state grand jury indicted Mr. Mulkern for eight counts; Count 7 was robbery. *Id.* On the first page of the indictment is the following:

> Count 7: T17-A M.R.S.A. §651(1)(E)
> ROBBERY
> CLASS A CRIME

*Id.* at 1. In pen, someone crossed out the "A" in "Class A Crime" and wrote "B" just above it. *Id.* Page three of the indictment under "Count 7" reads:

> . . . Brian Mulkern did attempt to commit theft by attempting to exercise unauthorized control over the property of the Short Stop store and/or Cassandra Cummings, namely money, and at the time of his actions he threatened to use force against Cassandra Cummings with the intent to compel her to give up the money, and ~~he was armed with a dangerous weapon during the course of the robbery~~.

*Sentencing Ex.* 4. Someone crossed out "he was armed with a dangerous weapon during the course of the robbery," initialed, and dated the modification "10-19-01". *Id.*

17

The second document is the judgment and commitment (J&C) in Mr. Mulkern's 2001 criminal case. *Sentencing Ex.* 5. In pen, under "[o]ffense(s) charged," the document reads, "Ct # 7 Robbery, Class A T17-A MRSA § 651(1)(█)" with the final letter either illegible or blacked out. *Id.* at 1. Just below, under "[o]ffenses(s) convicted," the document reads, "Ct. 7: Robbery - Cl. B T17-A § 651." *Id.*

The third document is the docket record in Mr. Mulkern's 2001 criminal case. *Sentencing Ex.* 6. Under "[c]harge(s)" is the following:

> 7    ROBBERY                          07/04/2001 FREEPORT
> Seq 4292    17-A   651(1)(A)      Class B
>                         Amended 10/19/2001

*Id.* at 1. Later, the docket record reflects the following:

> 11/20/2001   Charge(s) : 7
> RULING – ORIGINAL ORDERED ON 10/25/2001
>
> It is adjudged that the defendant is guilty of 7 ROBBERY 17-A 651(1)(A) Class B as charged and convicted.
>
> The defendant is sentenced to the DEPARTMENT OF CORRECTIONS for a term of 7 year(s).

*Id.* at 5.

First, the Court understands the indictment's reference to subsection (E) as an enhancement from a Class B offense to Class A. Section 651(1)(E) makes it is a Class A crime to commit robbery under any of the other subsections if it is done with a dangerous weapon. 1975 Me. Laws 3341-42, §651(2); *see also* 17-A M.R.S. § 651(1)(E). Robbery under subsections (A) or (B) are otherwise Class B crimes. 1975 Me. Laws 3341-42, §651(2); 17-A M.R.S. § 651(1)(A)-(B). The modification on the first page of the indictment from Class A to Class B corresponds to the amendment on October 19

in the docket report and the initialed modification on page three of the indictment, which struck through the lines "armed with a dangerous weapon." But this clarification does not establish which of the subsections Mr. Mulkern pleaded guilty to.

The reduction to a Class B offense clearly indicates that Mr. Mulkern pleaded guilty to either subsection (A) or (B), since subsections (C) and (D) are Class A crimes to begin with, even without the enhancement from the defendant's use of a dangerous weapon. 1975 Me. Laws 3341-42, §651(2); 17-A M.R.S. § 651(1)(C)-(D). Accordingly, the Court rejects the Government's contention that Mr. Mulkern's state conviction was based on subsection (C).

In reviewing the *Shepard* documents, the Court concludes that there is an irreconcilable ambiguity as to whether Mr. Mulkern was charged and convicted under subsection (A) or subsection (B). The indictment reads like a subsection (B) charge, which criminalizes a threat to use force to commit a theft:

> . . . Brian Mulkern did attempt to commit theft by attempting to exercise unauthorized control over the property of the Short Stop store and/or Cassandra Cummings, namely money, and at the time of his actions he threatened to use force against Cassandra Cummings with the intent to compel her to give up the money, and ~~he was armed with a dangerous weapon during the course of the robbery~~.

*Sentencing Ex.* 4. But the docket entry on November 20, 2001, the date of the sentencing, strongly suggests that the sentencing judge thought the sentence was being imposed under § 651(1)(A). The J&C, which typically would clarify the ambiguity, fails to do so, because the subsection of § 651(1) is blacked out or is illegible and the remaining reference to § 651 does not list the subsection.

Given that the *Shepard* documents fail to clarify which of the subsections Mr. Mulkern was charged, convicted and sentenced for violating and given that if he was charged, convicted and sentenced for violating § 651(1)(A), he would not have committed a "crime of violence" under U.S.S.G. § 2K2.1(a)(4)(A), the Court concludes that Mr. Mulkern's base offense level is 14.

### 3. Recalculated Guideline Recommended Sentence

The recalculated guideline sentence is as follows:

(1) A base offense level of 14 under U.S.S.G. § 2K2.1(a)(4)(A);

(2) A four-level increase under U.S.S.G. § 2K2.1(b)(6)(B) because he possessed ammunition in connection with another felony offense, the burglary of a residence;

(3) An adjusted offense level equal to 18;

(4) A two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a);

(5) A one-level reduction for timely notifying authorities of the intention to enter a plea of guilty under U.S.S.G. § 3E1.1(b);

(6) A total offense level of 15;

(7) A criminal history score of 12, establishing a criminal history category of V.

(8) Based upon a total offense level of 15 and a criminal history category of V, the guideline imprisonment range is 37 to 46 months.

### B.    Credit for Time Served in State Custody

Mr. Mulkern argues that the Court should reduce his sentence by approximately seventeen months based on the time he spent in state custody between his arrest on August 26, 2014 and his transfer to the BOP following his federal sentencing on January 28, 2016.  *Def.'s Mem.* at 6-7.  At some point after the federal sentencing on January 28, 2016, the state of Maine dismissed the state charges that formed the basis of his period in state custody.  *Gov't's Reply* at 6.  Mr. Mulkern represents that the BOP informed him that the time toward his federal sentence started upon his transfer to BOP following sentencing in 2016, not upon his state detention for burglary.  *Def.'s Mem.* at 7.  The Government does not contest Mr. Mulkern's assertion about BOP's determination but argues that Mr. Mulkern is not eligible for credit under the guidelines.  *Gov't's Reply* at 6-7.

The sentencing guidelines contain a complex set of scenarios under which the sentencing court may credit undischarged or anticipated state terms of imprisonment.  *See* U.S.S.G. § 5G1.3.  These provisions "are less than a model of clarity."  *United States v. Gondek*, 65 F.3d 1, 2 (1st Cir. 1995).  First, any new sentence is imposed consecutive to the undischarged term if the new crime occurred while the defendant was imprisoned for the prior crime.  U.S.S.G. § 5G1.3(a).  Second, if the new term of imprisonment "resulted from the prior offense that is relevant conduct" under the guidelines, the sentencing court adjusts the sentence for time served on the undischarged term of imprisonment if that time will not be credited by the Bureau of Prisons and imposes the remainder of the sentence concurrently.  U.S.S.G. § 5G1.3(b).  Third, if "a state term of imprisonment is anticipated to result from another offense

that is relevant conduct" under the guidelines, the sentencing court imposes the new sentence to run concurrent with the anticipated term of imprisonment. U.S.S.G. § 5G1.3(c).

As an initial matter, the conduct underlying Mr. Mulkern's state charge does qualify as "relevant conduct" under the sentencing guidelines. "Relevant conduct" is defined in § 1B1.3(a)(1)-(3) and includes "all acts and omissions committed . . . by the defendant . . . that occurred during the commission of the offense of conviction." U.S.S.G. § 1B1.3(a)(1). Mr. Mulkern stole the ammunition that served as the basis for this federal conviction during the burglary that served as the basis for the state charge, and the burglary was used to adjust his offense level under U.S.S.G. § 2K2.1(b)(6)(B).

Despite meeting this initial § 5G1.3 requirement, Mr. Mulkern's arguments fail for several reasons. Section 5G1.3(b) does not apply to Mr. Mulkern's time in state custody because he was not convicted or sentenced for the conduct that served as the basis of that custody. When there is no other conviction, there is no "sentence" or "term of imprisonment" for the Court to consider. The weight of authority suggests the guideline provision does not apply to any time defendants serve in state pretrial detention before federal sentencing. *See e.g. States v. Rollins*, 552 F.3d 739, 742 (8th Cir. 2009) (concluding § 5G1.3(b) "does not apply" because "[t]he district court sentenced Rollins before the state court sentenced him"); *United States v. Stebbins*, 523 F. App'x 1, 4 (1st Cir. 2013) (same); *Claudio-Ortiz v. United States*, 115 F. Supp. 3d 238, 242 (D.P.R. 2015) (same).

Section 5G1.3(c) does not apply because the Court does not anticipate any state "sentence" or "term of imprisonment" will follow this sentencing. The state of Maine dismissed the state charges and there is no evidence in this record that the state of Maine will or can reinitiate these dismissed charges.

The guidelines also permit a downward departure when the defendant already served the prior term of imprisonment if the sentencing court could have applied § 5G1.3(b) had the defendant not yet finished serving the sentence. U.S.S.G. § 5K2.23. This provision is of no assistance to Mr. Mulkern. As discussed with § 5G1.3(b), the state court did not impose a "term of imprisonment" or "sentence" for this court to now consider. This provision allows a sentencing court to consider a discharged term of imprisonment when sentencing a defendant, just as it would for an analogous undischarged term of imprisonment. But by its terms, like § 5G1.3(b), § 5K2.23 does not cover a case involving presentence custody which did not result in a conviction and sentence.

The guidelines, however, contain an escape valve for "circumstances of a kind not adequately taken into consideration" in the guidelines. U.S.S.G. § 5K2.0(a)(2)(B). Specifically, subsection 2K2.0(a)(2)(B) provides:

> A departure may be warranted in the exceptional case in which there is present a circumstance that the Commission has not identified in the guidelines but that nevertheless is relevant to determining the appropriate sentence.

In general, the guidelines allow a credit against a federal sentence to the extent a defendant has been incarcerated for a state crime involving conduct relevant to the guideline calculation. Here, a defendant spent seventeen months in state custody for

conduct relevant to his guideline calculation, but under the precise language of the guideline provisions, he is not entitled to a credit for that time served. This is only because the state decided not to proceed against him with its charges and the BOP concluded that he is not entitled to a credit. Ironically, if the state had proceeded and convicted the defendant for the very same conduct, he would have been allowed a credit. This result is counterintuitive, is based on circumstances beyond the defendant's control (namely, whether the state prosecutor proceeds with the state charge), and seems fundamentally unfair, leaving the defendant without any credit for time served pursuant to a related state charge. The Court concludes that Mr. Mulkern has met the requirements for a downward departure under § 5K2.0(a)(2)(B). In reaching this conclusion, the Court determines that the Defendant's conduct in this case does not fall into any of the categories of restricted or prohibited departures. *See* U.S.S.G. § 5K2.0(b), (c), (d); 18 U.S.C. § 3553(b)(2) (child crimes and sexual offenses). Once the Court concludes that "there exists a[] . . . mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described," the statute directs the Court to the analysis in § 3553(a)(2). 18 U.S.C. § 3553(b)(1).[6] Finally, if § 5K2.0(a)(2)(B) were not available, the Court would adjust Mr. Mulkern's sentence under its authority in 18 U.S.C. § 3553(a).

---

[6]    There is another statutory provision that comes into play: 18 U.S.C. § 3585(b). In addition to the adjustments under the guidelines, a defendant is sometimes entitled by statute to credit for prior custody. A defendant's sentence "commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility. . ." 18 U.S.C. § 3585(a). However, defendants

## IV. CONCLUSION

The Court concludes that Mr. Mulkern's robbery conviction is not a crime of violence under the sentencing guidelines and that his base offense level is 14 under the guidelines. The Court further concludes that Mr. Mulkern is entitled to a credit for the seventeen months he served in state custody under U.S.S.G. § 5K2.0(a)(2)(b) through 18 U.S.C. § 3553(b)(1). Mr. Mulkern has requested the right to be present at his resentencing and the Court therefore directs the Clerk's Office to schedule his resentencing on a priority basis.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 20th day of November, 2017

---

shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences--
    (1) as a result of the offense for which the sentence was imposed; or
    (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
that has not been credited against another sentence.
18 U.S.C. § 3585(b). The United States Supreme Court has ruled that the Attorney General, not the sentencing court, is responsible for this calculation. *United States v. Wilson*, 503 U.S. 329, 112 S. Ct. 1351 (1992); see also *United States v. Martin*, 363 F.3d 25, 39 (1st Cir.2004) (noting Attorney General is responsible for calculating amount of credit granted to defendants). In *Rogers v. United States*, 180 F.3d 349 (1st Cir.1999), the First Circuit made it clear that a request for credit for prior custody under 18 U.S.C. § 3585(b)(2) must be made, in the first instance, to the Attorney General through the BOP upon imprisonment after sentencing. *Id.* at 357-58. Once administrative remedies are exhausted, prisoners may then seek judicial review of any jail-time credit determination by filing a habeas petition under 28 U.S.C. § 2241.
    But for this constraint, § 3585(b)(2) would apply to Mr. Mulkern's case. The burglary under state law is a "charge for which the defendant was arrested after the commission of the" ammunition possession offense, because it was during that burglary that Mr. Mulkern stole the ammunition. That seventeen months in state custody before sentencing in federal court "has not been credited against another sentence." Therefore, the time in state custody satisfies the requirements of § 3585(b). Nevertheless, in light of the need to exhaust administrative remedies and the availability of a remedy under the guidelines, the Court does not reach whether there could be an exception to the exhaustion requirement in the unusual facts presented by this case.